[Crim. No. 12843.   Second Dist., Div. Five.   Aug. 25, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ADDISON TRUMPOUR, JR., Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

THE COURT.—After a trial by the court sitting without a jury, jury trial having been duly waived, the defendant was found guilty of violation of section 11530 of the Health and Safety Code (possession of marijuana), a felony. The offense was alleged to have been committed on or about April 22, 1966. The trial commenced and was concluded on July 12, 1966. Probation was denied and the defendant was sentenced to state prison. The appeal is from the judgment of conviction.

### The Facts

On April 22, 1966, William A. Harmon, a deputy sheriff of Los Angeles County, had parked his marked sheriff's vehicle

upon the grounds of the Norwalk High School. He had received complaints from several members of the faculty of the high school concerning cars cruising in the vicinity of the school, and he had been asked by them to check on such activities. At about 12:01 p.m. he observed a dark blue 1964 model Corvette drive back and forth in front of the school four times. School was in session and each time the Corvette passed by in front of the school the driver gunned the motor. After the Corvette made the fourth pass, Deputy Harmon left his position on the school grounds and followed it a short distance. He observed that the rear license plate of the vehicle was loosely attached, ''It was loose to where it would jiggle on—jiggle on the license plate frames.'' One corner of the plate was fastened by a screw and the other was fastened by a piece of wire.[1] He was a little suspicious because the occupants of the vehicle were youthful in appearance and were riding in a late model expensive automobile. He was also of the opinion that the mufflers on the vehicle were in violation of the provisions of the Vehicle Code.[2]

Deputy Harmon stopped the vehicle. He asked for and received the identification of the driver of the vehicle (Roland Bruce Clendening, 17 years of age) and of the defendant. Clendening said that he had been picked up by the defendant and was driving the vehicle at the time it was stopped because the defendant had no driver's license. Upon examination of the registration slip of the vehicle, produced by the defendant, Deputy Harmon discovered that the license numbers shown on such slip were at variance with the numbers shown on the license plates attached to the vehicle. The defendant stated that the vehicle belonged to his aunt who lived in Placentia. Deputy Harmon then checked the car by means of

---

[1]Section 5201 of the Vehicle Code reads: ''License plates shall at all times be securely fastened to the vehicle for which they are issued so as to prevent the plates from swinging and shall be mounted not less than 12 inches nor more than 60 inches from the ground in a position to be clearly visible, and shall be maintained in a condition so as to be clearly legible. No covering shall be used on license plates.''

[2]Section 27150 of the Vehicle Code reads: ''Every motor vehicle subject to registration shall at all times be equipped with an adequate muffler in constant operation and properly maintained to prevent any excessive or unusual noise, and no muffler or exhaust system shall be equipped with a cutout, bypass, or similar device.''

Section 27151 of the Vehicle Code reads: ''No person shall modify the exhaust system of a motor vehicle in a manner which will amplify or increase the noise emitted by the motor of such vehicle, above that emitted by the muffler originally installed on the vehicle and the original muffler shall comply with all of the requirements of this chapter.''

the radio in his patrol car and was informed that the vehicle had been reported as stolen. He then placed both the driver and the defendant under arrest for grand theft.

The defendant and his companion were taken to the Norwalk substation of the sheriff's office, where, at 1 p.m. on the day of the arrest, Deputy Joseph S. Kiloh, Jr., observed, while standing directly in front of the defendant, a waxed paper bag containing a green leafy substance—later found to be marijuana—fall from the waistband of the defendant's trousers as he was in the act of removing his shirt in the process of a skin search conducted as part of the booking procedure. Later, on the same day, Deputy Glenn D. Hutchinson obtained a written signed statement from the defendant in words and figures as follows: ''April 22—'66, 2:52 p.m.

'' 'I, John Trumpour, am making this statement at [*sic*] my own free will after being advised of my constitutional rights. Approximately April the 15th, 1966, I went to Ensenada, Mexico and I bought one can of marijuana at $5.00 then brought it back home. I smoked at [*sic*] except the amount that I had hid on my person.' Signed 'John A. Trumpour.' ''

▮ The foregoing written statement was received in evidence at the trial over the objection of the defendant that no proper foundation had been laid. When defense counsel asked Deputy Hutchinson whether, before the taking of this statement, he had advised the defendant ''that he was entitled to the services of a public defender or attorney if he could not afford one,'' the response was, ''No, sir I did not.''

The written statement constituted a confession of guilt of the crime charged. The trial was had after June 13, 1966. The record discloses that the defendant was told of his right to remain silent, of his right to counsel, and that anything he might say would be used against him in any later court proceedings. But: ''In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one.'' (*Miranda* v. *Arizona*, 384 U.S. 436, 473 [16 L.Ed.2d 694, 722, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The guide lines of *Miranda* are available to this defendant. (*Johnson* v.

*New Jersey,* 384 U.S. 719, 734 [16 L.Ed.2d 882, 892, 86 S.Ct. 1772].)

The use of an illegally obtained confession results in a denial of due process and requires reversal regardless of other evidence of guilt. (*People* v. *Dorado,* 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361].)

The defendant contends that the arresting officer acted illegally in stopping the vehicle and therefore the evidence subsequently obtained was inadmissible. We find no merit in this contention. However, in view of the error in admitting into evidence the confession of the defendant obtained in violation of the rule laid down in *Miranda* v. *Arizona, supra,* we reverse the judgment and remand the cause for a new trial.

The judgment is reversed and the cause is remanded for a new trial.

Respondent's petition for a hearing by the Supreme Court was denied October 25, 1967. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.